Good morning. May it please the court, Josh Vinson on behalf of the respondents, County of Will and the Sheriff of Will County. The issue in this case is whether the petitioner sustained an injury arising out of and in the course of his employment. The commission found that he was, he did not sustain such an injury, that he was engaged in a personal deviation at the time of the accident and the accident arose out of his own misconduct. Did the accident take place before or after he received a call to assist the fellow deputy? After. And so he was on his way to assist the fellow deputy, I'll bet, in two-page counting in the accident, yes. Correct, although he was dispatched only under false pretenses. No, I understand he didn't tell them where he was. He was asked, can you respond? Those are the exact words of the dispatcher, can you respond? And that's at page 260, the C265 of the record of the recording of the dispatch says, can you respond? And he says, yes, without revealing that he's 20 to 25 miles away. And then on top of that, as he is responding, he's contacted by the deputy who's requested the backup and lies to him and tells him he's only three to five minutes away when he's nowhere as near. But there's no question that he was going to assist that deputy when the accident took place. That's correct. Okay. That's correct. Now, does that make this case a little bit different than the checkered taxi cab case? No, I don't think so. You know, one of the things that... Did the checkered taxi cab driver get a call to pick up a fare? No. Before he re-entered the city of Chicago? No. So he was still on the frolic outside the city of Chicago at the time of the accident. That's correct. Judge? Just to pick up on that point and amplify it further, at the time of the accident, isn't arguably the personal deviation has ended? No. He's heading back to respond to a call. Is he still on a deviation when he's heading back to respond to a call? Yes, he is. The personal deviation cases indicate that the deviation doesn't end until you've returned to essentially the point of departure. But more importantly than that, Where would that have been in this case? Clearly he's responding to a call. You don't dispute that. You say he lied as to where he was. You're not disputing he was heading to the scene of the call, correct? Do not dispute that. So at what point, then, does the personal deviation end? I think at the... I think, personally, it would end when he returns to his duty post that he left. Geographically? Where? Geographically, when he returns to his duty post. So until he gets back into where? Will County? No, to his duty post, the Northwest Cops, in the zone he was assigned to. Okay, so until your argument is until he gets back to his zone, he's still on a personal deviation. Yes, that's correct. And that's what the case law would support. You know, when you look at the personal deviation cases, there's a pattern, a clear pattern of when someone leaves the sphere of employment. And there's four factors every one of those cases considers. One is, how significant is the deviation? You know, you look at something like Ace Pest, or you look at something like Robinson. Someone's on their way home, they stop to aid a stranded motorist. Someone's on their way to a subdivision to do other work, they pick up their kid to go Christmas shopping. The deviation is not significant. Checker Taxi is just an example. It's not a hard and fast rule of geography. It's an example of, how significant is the deviation? And there, again, the guy was miles and miles away. He was out in Maywood, nowhere close to where he was supposed to be. Same situation here. I don't think you need to spend a lot of time trying to convince us that he was off on a personal frolic, personal deviation, personal error. Okay. I don't think any way. I doubt your opposing counsel is going to say when he left his area and went off somewhere else, he had gone out of the zone of his responsibilities. Right. But the question then becomes, we have to draw, where does that end when he's heading back to respond to an official call, just as he would have been doing if he was in his proper zone? That's what I'm trying to help you with, because what I think the cases reveal is a four-part test of when someone's outside the sphere. And the four factors that every one, you look at these dozen cases, the four factors that these cases always consider are the significance of the deviation, how far are they? Number two, was there rule violations involved and how significant are they? Are they safety violations? What are the nature of the rule violations involved here? And there's significant ones here. Number three, the employer's reasonable expectation. In a case to say, this is all a matter of degree, okay, so I don't think you're going to find, I don't think it's appropriate to go with hard and fast rules in any of this. Simply because he's on duty and responding to a call doesn't mean he's within the sphere of employment when you look at the tests that the courts apply. And so it's how significant is the deviation, rule violation and the nature of it, employer's reasonable expectation. Is this person somewhere where the employer would   is that he's within the sphere of employment. And that's where the receipt comes into play in this case, a significant one, because he would not have been dispatched. Very clear testimony from the dispatcher, I would not have sent him if I knew where he was, that he was that far away. And the fourth factor that they consider in all these cases is, was the act involving a personal interest or one related to the employment? It still ends up with the same question. When, in your opinion, based by the case law, would the deviation have ended in this particular scenario? When would it have ended in your opinion? It could have ended if he had revealed to the dispatcher, I'm in DuPage County, when he was called. Can you respond? He said, I can, but I'm in DuPage County. Now, at that point, to help Deputy Kirsch, the deviation's ended, and he's back in the scope. So that's when he fesses up and tells the dispatcher where he's at, that ends the deviation? That would be one way, sure. Another way would be if he returned back to the point of departure from leaving his post. So had he made it back into his zone, then it would have ended. That's the bright line rule here. Yeah, but I'm not advocating a bright line rule. That's my point, is there aren't any bright line rules in these cases. That's what these cases reveal, is that there is no bright line rule. So what I'm saying is, if you have a variety of different cases, you can find one to support whatever argument you want. What about the argument, this, what about this argument? At the time of the accident, he was doing just what he would have done had he remained in his zone, he was responding to a call. I'm not sure I understand your question. At the time of the accident, he was responding to a call. Yes. Just as he would have been if he had never left his zone and never went in an area. That's correct. Right? Yes. Then he would have. But what changes the whole mix here is the reason that he is speeding in this case, because this was not an emergency. He knew that this was not an emergency. There was no Code 1 call. He didn't report a Code 1. The rules require, if you look at page, I think it's C-285 of the record, where they set out all the rules for emergency response and high-speed response. You only do that when it's an emergency. He knew there was no emergency. He admits that on the record, on his direct examination, as well as his cross, that he knows there's no emergency. So there's no reason for him to be speeding at all, let alone speeding without the use of any of the safety devices that he is required to use when he is responding to an emergency. The question he exercised, I think we can probably all agree, I think, he exercised very bad judgment that night, A, leaving the zone, B, speeding bad, and C, turning off the siren. But all for the purpose of serving his own personal interest. It's no different. Look at the case in Saunders, or look at a case like Saunders where the guy is on the forklift, on the employer's property, and all he does is hitch a ride on a forklift to get over to get his lunch. And the court said, outside the scope. Why? Because he was doing it out of his own personal interest. So everything, the commission found that this accident arose out of, had its origin in his effort to cover up his misconduct. That's what the origin of the accident is. It's not responding to a call that he knows is no emergency. The origin of the accident is trying to cover up the fact that he's 25 miles from where he's supposed to be. That's why he's speeding. That's why he's not using his lights. That's why he's being so careless. That's why he's lying to his coworker that I'm only three to five minutes away when he's 15 minutes away. All of these things are calculated to cover up the rule violation that he engaged in, not to respond to an emergency that would be within the sphere of his employment. And so that is why the commission is fairly concluding here, and this is a very deferential standard of review that applies in this case. It's clearly erroneous. It's clearly erroneous standard. This is a mixed question of law and fact. Well, yeah, but we've never applied the mixed question of law and fact to workers' compensation cases. It's always been de novo on the issue of law. There's no statutory interpretation. There's no statutory interpretation here. This is, as your case, as your decision in Dodaro, recent decision in Dodaro says, there's all three in these cases. But why isn't it, if you have these four elements that you're talking about, a question of fact for the commission to determine whether he had a return to his sphere of employment or he had not? I think that's a mixed question of law and fact. Sotomayor, I don't think we've ever had a question of law and fact in a comp case. But even if they haven't, they've said it. Well, Dovader says it, but it's not a comp case. Dovader is where Justice Balandic invented the mixed question of law and fact and clearly erroneous standard. Even if it weren't. The rest of us ever since. Even if it weren't a clearly erroneous standard and it's a manifest wage standard, there is nothing to indicate here that there's no evidence to support the commission's decision or that the opposite conclusion is clearly evident? No, I don't think so. There's ample evidence to show here, as the commission found, that, and by his own admissions, that he knew there was no emergency, that he lied deliberately to his coworker to hide the fact that he was well away from his post, and that he was speeding the whole time from the moment he got it, all for that purpose, not because of any emergency. I mean, that's all very clearly established by the record. And as I said, when you look at these cases, and there's 12 cases that break this down, those are the four, that's the four factors all these cases look at. You know? How far away is he? How significant is the rule violation? What is the employer's reasonable expectation? I think that is a significant factor in these cases, especially in instances where the person travels as part of their job, as a police officer may. Because in those instances, there is a significant expectation on the part of the employer that the police officer will be where he's supposed to be. The public's safety depends upon it, as does the safety of his fellow officers. So you would expect him to be at his post. You wouldn't expect him to lie. The Petitioner admitted that dispatch presumes you are at your post when they make a call to you. He admitted that. So he deceives everybody. And again, the only reason he's doing this is, the only reason he's dispatched, is because he has created that false impression that he is where he is supposed to be. So the employer's reasonable expectations are not that he would be 25 miles away. The rule violations, significant in this case. Leaving his duty post, speeding when he knows there's no emergency, and he admits that. Running a red light, not using his lights or siren, not calling the Code 1 as the rules require. All of these things. When you look at cases like Checker, that's a rule violation, leaving his zone. Saunders, riding the forklift when that's prohibited. Lumagi, going down in the mine shaft and taking a motor to use when you're prohibited from using it. Public service, guy only goes 650 feet west of the garage he's supposed to be at and gets nailed by a train coming back with the employer's car. Rule, serious rule violation, those cases found outside the sphere of the employment. And what was the purpose being served in every one of those cases? It's not connected to any interest of the employer. The speeding, the racing back, going to Deputy Kirsch's position is not motivated by an emergency or an interest of this employer. It's occurring because of false pretenses and it's occurring because he's racing because he doesn't want anybody to know that he left his post. Now that's, when you look at the four parts that every one of these cases, you how far? Reasonable expectations of the employer, rule violations, personal interest served. Those are the things that every one of these 12 cases that are cited throughout the briefs on personal deviations considered, they break evenly almost right down the middle, six and six on this. So when you see cases like international arts where the guy's working late to get the advertising brochure out and he normally picks up his wife and he says to the employer, hey, I got to go pick up my wife and the employer says, go pick up your wife. And he does and he gets killed on the way back. No deviation. He wasn't at work. Thank you, Your Honor. We'd ask that you affirm the commission, reinstate the commission. Good morning, Justices, Counsel. Let's start for the beginning to the fact, he was asked, can you respond? He said yes. Where is that a lie? We're lawyers here. He has no duty to say where he is. It's in the record by the dispatcher that she doesn't necessarily expect him to be on his post but somewhere near it. Let's talk about the county beat. That's almost one-eighth of the entire county. He's only a few miles out of it. These are huge areas that these guys patrol. He was never charged with a rule violation of some sort of false conduct. He was charged with leaving his post without permission, which is a common thing, and normally the dispatcher said, well, normally if they go any distance, they let us know. All right. So you're not disputing it. It's indisputable that he left his post. He was out of the area he's supposed to be and he's doing a personal errand. That's not indisputable. Yeah, and if he got hurt at the post office, there's no problem. It wouldn't have been compensable. But he gets the call and he responds. You want to hear what he could have done? Nineteen and a half years. He's a war dog. He just does his job. Nineteen and a half years. This is what you say. A 14 or 30 year available. No squadron. I got a stomach problem. Now he's lied. But hey, guess what? He doesn't go on the call. Well, did he not misrepresent how far away he was? Not to his boys. This was on a side beam, car to car, and these guys don't like each other. I mean, I don't know if you worked in a police station. Not everybody loves each other. There's somebody here who did work in a police station. I know. I know him well. And, you know, it's not unusual for these guys to be out of it. If you make a rule, you get in a town like Aurora, you get a high crime rate area, and that might be four blocks. And you really think the boss thinks that guy's going to spend eight hours in that four blocks? Well, was he truthful? Was it Officer Smith that called him or talked to him? Pardon, Justice? Was it Officer Smith? No, it was Kersh, Deputy Kersh on car to car, which is a private frequency between them. I meant the dispatcher. The dispatcher was a lady, and she never asked him where he was. He never volunteered. And he didn't have to take the call. If he wanted to, he would have. Would she have said what she would have done if she had known where he was? She said that if he had told her that he was, she would have assigned someone else. But she could have asked. But he didn't have to tell her. He doesn't have to tell her. He doesn't have to tell her. I know where he's found him. Right. That's why they don't charge him with any false statements. Look at the rule violations that are cited. And on top of it, him, first of all, 2 o'clock in the morning, one officer, and Kersh never had the decency to tell him I got two Joliet policemen with me. It's 4 o'clock in the morning, one officer is along with four people. Now, a copper with 30 years' experience knows that's not a healthy situation. And he's not going to call a 10-1 just because he's alone with four people. What you say in the real world, you know, has a lot of merit to it. But let's not get sidetracked over personalities and when he left and things of that. At some point, you're not disputing, you've already acknowledged that, he went on a personal errand that took him out of the course of his employment. Correct. He was in a mailbox outside of his zone. He clearly is not in the course of his employment. So when, in your opinion, under the law, did he return to the course of his employment? Without a doubt, under the statutes, under the common law, at the moment he took the assignment and he says, 40 North responding, he's back in the scope. So if he drove to the city of Chicago or he left the state and went to Indiana and gets a call and he's driving back and has an accident in Indiana, under your argument, he's back in the course of his employment, right? He's going to get suspended either way. But you're not answering my question. Well, in order to answer your question, I have to respond. Let me explain. When a dispatch is made and to the time that the guy arrives, his sergeant might very well ask him at the end of the day, hey, pal, how come it took you an extra seven minutes or eight minutes? Where were you? He might still get suspended. He doesn't have to take it. This is just the reality of how it operates. And now today they're putting the GPSs into the beat car radios and they're going to know where he is anyway. But the point is he wasn't in the city of Chicago. Sure, he's in the city of Chicago, but he's only three miles, which is not a huge distance for the size of the beats. But what's wrong with tying this into his returning to the zone that he was assigned to? If you look at Check Your Cab, it uses this language. When an employee embarks upon a personal side trip, which is what happened here, he does not return to the course of his employment until the trip is completed. And so arguably, is his trip completed before he returns to his assigned zone? First of all, it says because he's licensed as a cab driver in the city of Chicago. Now, when you're a peace officer on duty, wherever you are, first of all, we have to distinguish the fact that this gentleman happens to be a public officer. He's not even an employee. And the legislature just granted, they chose to grant workers' comp coverage to deputy sheriffs. They didn't have it in common law, and they did because they weren't considered employees. His status as a peace officer, regardless where he is in the state of Illinois, if he does something wrong, he could be charged with official misconduct. Do you think the fact that he was at the post office and he sees a woman being accosted, he says, oh, well, I'm a rural county deputy sheriff. I'm not going to get involved with this. I'm not going to do anything. He's prosecutable. So your argument then has to be, and this is the concern. We're not a public policy body. We have to judge the case on the law, on the facts, on the merits of the case. But if you're concerned at all about precedent, then what you seem to be saying is, look, to all the police officers out there, it doesn't matter where you end up. It doesn't matter what you are doing. As long as you are responding to a call from anywhere, anyplace, doing anything, and you have an accident, you're covered because you're still a peace officer. Should that be the rule? No. That's not what I'm saying. What are you saying? I'm saying, well, let's look what the legislature did. Right now, a peace officer responding as they amended it, he'd have to be convicted of a felony. To be what? Outside the scope of his employment? Then he's no longer an employee. Right. Then he's outside the scope of his employment. So it tells you what the legislature, even in amending the new act, our gentleman would have been. That's the outside limits. When does he refer to his employment? When he performs a statutory duty, when he performs a common law duty. No matter where he's at. As long as he responds to the call, you disagree with that, but that's your argument. You can say reasonable. It wasn't unreasonable. An extra five minutes or ten minutes wasn't going to change anything. He wasn't in the city of Chicago. He wasn't in Indiana. It was within the reasonable expectations of what the situation is. So that's the rule. As long as it's within a reasonable, subjective situation. Well, then reasonable is kind of objective, not subjective. Because I wouldn't be arguing if he had slipped on a wet floor in the post office or if he was in Indiana. What's an hour response? But actually, if he had been on the other end of Will County and got the call, you know, sometimes all the cars are down and there's only one car and he's got to come from a long distance. There's no question that under the facts he was operating their squad car in uniform and performing a duty. The case law says that he has to be entirely out of the sphere of his employment. And that's Republic Iron and Steel Company. How can you say a policeman not so far away? Why do you have this not so far away? I know Will County intimately. You're further, you're closer to Indiana where he is than to the southern part of Will County. He was actually, no, he was in Aurora. I know the geography. Yes, where he was. He's closer to Indiana than he is to the southeastern part of Will County. He was three miles out of your county. That's correct. But you're talking about with a hypothetical, well, not if he's in Indiana. Well, I mean, all right, if you go to the west end of Will County, you're in Indiana. No, you're not. If you're in Will County, you're not in Indiana. You're in Illinois. Right. But once you leave Will County, I believe Will County sits south of Cook County and east of that is Indiana. Right. But if you're in Will County, you're not in Indiana. Right. All right. I misspoke. Thank you, Justice. What do you see as the standard of review on this case? You see it as manifest weight? I see it as the facts are not in dispute. I think it's as a matter of law. I think that's the way the arbitrator Sherman saw it. That's the way the dissenting, I mean, Commissioner Sherman, that's the way the arbitrator and that's the way Justice Wheaton saw it, is that under these facts where they find that he's responding to a call, there was no finding that it was an unreasonable response to a call, but that he's responding and how they confer that it was entirely personal. If he doesn't have the accident, he performs the duty. And he performs it within a reasonable time. It's 2.45 in the morning, and these are human beings. Are we going to tell coppers that, you know, every time you leave your beat and you get an accident, your village, your town, your county can walk away from you because you left your beat without permission? That's what you're going to tell them. Are you going to tell them that, hey, you're outside your beat, and you see a felony go down and you involve yourself, you haven't returned to your beat, and you get shot, and we don't care about your wife and kids. They're not going to get any death penalties. We're not caring that you're performing. It kind of comes down to this. Was he performing the job of a deputy sheriff, of a peace officer? Yes. Well, the whole time, he's still in uniform in his squad car. Right, so that's why he never left. That's why the case that they cite, the yellow cab case, is a red herring. It doesn't apply to him because he never leaves the scope of his employment. Then the only issue is, is it a rise out of uniform? Does it because he's in uniform? He can't possibly leave the scope of his employment because he's in uniform? Well, under the facts here, of course he's got a sign that says, I'm a peace officer, you need help, you tell me, I've got to respond. There's no excuse to him to say to a citizen who needs his help that, oh, by the way, I've got to go back to Will County, I can't help you. That's official misconduct. He's going to be prosecuted. I'm going to fire him if he had worked for me. If he fails to take police action as a sworn peace officer and a crime is being committed in front of him, he can't turn his back or walk away. That's a felony. He's committed a felony if he doesn't. It's not a regular job anymore. You're a justice wherever you go, day or night. They can show up and ask you to sign a warrant or sign a search warrant. These are not jobs you walk away with. They're not 9-to-5s. Thank you, counsel. Thank you. In the Heyman case from 1941, the Supreme Court says that in these deviation cases, it is often a matter of degrees. Keep your voice up. It's often a matter of degrees in the personal deviation cases. I am not advocating any hard and fast rules here. I don't think that you can adopt a rule that simply because a peace officer is empowered to perform his duties at any time, he sees a problem that he is automatically clothed with acting in the coercent scope. There is a difference. This is the problem with Mr. Rittenberg's argument is it really begs the question. It assumes that whenever you're on duty, there cannot be a deviation, and that's not right. These are separate concepts. Whether a peace officer is on duty or off duty is one thing. Whether he's deviating from the scope of employment is a separate question. And in the case law, that question of deviation, and I urge you, you know, like I said, and as the Hayman case says, it's a matter of degrees, but if you draw that circle. In this case, the deviation occurs because it's a combination of factors, but I think the primary one here is, he's dispatched from someplace where the employer does not reasonably, he's somewhere where the employer does not reasonably expect him to be. Expect him to be at his post. When he's dispatched, and he is not. Okay? Let's take the geographic area of his post. Okay? Okay. He's somewhere in Naperville probably, right? He is. Or Aurora. Yeah, one of the two. Somewhere around there, because that's the divide of half Naperville is in Page. Yep. Okay. What's the distance where he is in Naperville to Page from where he could be in the furthest point of his post? About 20 to 25 miles is what I believe the record shows. That's what Chief Maher testified. That's what Deputy Kirsch testified. That he was that far? Yes. Okay. So that's a significant number. Is it within that post? Is there an area he could be in that's 25 miles away? No. I don't believe so. No. Would that be relevant? No. I don't think it would. Why not? Because, again, that goes to the employer's reasonable expectation of where he would be, and the presumption reasonable expectation when you dispatch a policeman is that they're going to be within a reasonable area of where the accident or incident is supposed to occur. Yes. Okay. So let's say the fact that he was actually closer to that scene if he was in DuPage County than he would have been if he was patrolling the southwest or southeast corner of his post. I mean, what's the harm at that point to the public? I mean, probably no harm from the standpoint that, you know, I've got to come back to, you know, whether he's violating a rule, where he's where he's expected to be, whether everybody's operating under the presumption, dispatch, as well as his fellow officers, that he's in a place where he can respond within a reasonable time. Yeah, but if I'm at the accident and I'm the injured person, I don't really care whether he's in DuPage County. I mean, in terms of me getting angry at the policeman. Yes. I don't care. Well, that's true. How could he possibly be there? I agree. But I think that the person who was coming down 75th Street and had that officer enter the intersection under high speed with apparently possibly no lights on and is injured, that member of the public is injured, when had everybody known the true facts, dispatch said they would have sent someone closer, I think that person's just as justified to finding that he's well outside the scope of his employment, too. What if he was in his post and he was going to that scene and the rules and regs say, okay, you've got to have your emergency flashers on, et cetera, and he doesn't? And he's within his zone? He's at his post? Yes. No, I would say in that case, under the case law, that's a more minor rule violation. It was an emergency. It was under dispatch. Under the case law, it's sort of mere negligence. Yes. And mere negligence doesn't take somebody out of their place. That's right. That's right. Again, it's this matter of degrees that you see in the case law. So it's not mere negligence if it happened in DuPage County? No, under these circumstances, because what's motivating the bad conduct is not to respond to an emergency. It's to cover up the deviation. Thank you, counsel. Thank you. That's what the commissioner thought. Thank you, Mayor. Thank you for this position.